**Fill in this information to identify your case:**

Debtor 1    MICHAEL DEAN GIBSON
            First Name          Middle Name          Last Name

Debtor 2    SARAH MICHELLE GIBSON
(Spouse, if filing)  First Name    Middle Name          Last Name

United States Bankruptcy Court for the: Western District of Washington

Case number   19-42064bdl7
(If known)

## Official Form 427

# Cover Sheet for Reaffirmation Agreement                    12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

| Part 1: | Explain the Repayment Terms of the Reaffirmation Agreement |
|---|---|

**1. Who is the creditor?**

LES SCHWAB TIRE CENTERS OF WASHINGTON, INC.
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed    $ _____ 132.13

To be paid under the reaffirmation agreement  $ _____ 132.13

$ __25.00__ per month for 6 _____ months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed _____ **18** _____ %

Under the reaffirmation agreement _____ 18 % ☑ Fixed rate
                                              ☐ Adjustable rate

**4. Does collateral secure the debt?**

☑ No
☐ Yes. Describe the collateral. _____

Current market value   $ _____

**5. Does the creditor assert that the debt is nondischargeable?**

☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J

6a. Combined monthly income from line 12 of Schedule I   $ ____ 3665.34

6b. Monthly expenses from line 22c of Schedule J   $ ____ 3481.87

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   − $ ____ 0

6d. **Scheduled net monthly income**   $ ____ 183.47
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement

6e. Monthly income from all sources after payroll deductions   $ 3665.34

6f. Monthly expenses   − $ 3,481.87

6g. Monthly payments on all reaffirmed debts not included in monthly expenses   − $ −0−

6h. **Present net monthly income**   $ 183.47
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Check one.
☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

## Western District of Washington

In re MICHAEL DEAN GIBSON
SARAH MICHELLE GIBSON ,
*Debtor*

Case No. 19-42064bdl7

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** LES SCHWAB TIRE CENTERS OF WASHINGTON, INC.

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: **Purchase Money Security Interest**

*For example, auto loan*

B. *AMOUNT REAFFIRMED*:     $ 132.13

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 18%.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

   1.   Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions
(take-home pay plus any other income)                   $ 3445.34

      b. Monthly expenses (including all reaffirmed debts except
this one)                                     $ 3481.87

      c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ 183.47

      d. Amount of monthly payment required for this reaffirmed debt     $ 25.00

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2.   You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

      Check one of the two statements below, if applicable:

      [✓]   You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

      [ ]   You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

      Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

      [ ]   You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.    DISCLOSURE STATEMENT

1.  **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.  **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.  **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.  **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5.  **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

## C.    DEFINITIONS

1.    **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.    **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.    **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

| Date | Inv# | Type | Qty | Amount | LSP Code | Product Description | Balance |
|------|------|------|-----|--------|----------|---------------------|---------|
| 4/12/2019 | 42600330640 | ROA | 1- | 115.00- | 11-23 | AR Payment 1000 | |
| | | Inv Total | | 115.00- | | | 176.17 |
| 4/30/2019 | | SVC | | 3.39 | | ACCOUNT CURRENT | |
| | | Inv Total | | 3.39 | | | 179.56 |
| 5/10/2019 | 42600334630 | ROA | 1- | 25.00- | 11-23 | AR Payment 1000 | |
| | | Inv Total | | 25.00- | | | 154.56 |
| 5/31/2019 | | SVC | | 2.57 | | ACCOUNT CURRENT | |
| | | Inv Total | | 2.57 | | | 157.13 |
| 6/07/2019 | 42600338412 | ROA | 1- | 25.00- | 11-23 | AR Payment 1000 | |
| | | Inv Total | | 25.00- | | | 132.13 |

# LES SCHWAB TIRE CENTERS/AFFILIATED DEALERS RETAIL CREDIT PLAN AND SECURITY AGREEMENT

I. From time to time I/We, the undersigned (collectively "Applicant"), intend to purchase goods and services from Les Schwab Tire Centers/Affiliated Dealers ("Seller"). Upon prior approval by Seller, all such purchases will be governed by this Retail Credit Plan and Security Agreement ("Agreement"). The term "Seller" in this Agreement includes Seller and all affiliates of Seller. The words I, me and my, mean each and all of those who sign and/or enter this Agreement or otherwise agree to be bound by the terms of this Agreement. If more than one person signs this Agreement, and/or otherwise agrees to be bound by the terms of this Agreement, all obligations will be joint and several.

II. Applicant hereby grants Seller a purchase money security interest in all goods purchased from Seller under this Agreement to secure my performance of this Agreement. The purchase money security interest will continue in the specific goods purchased only until such time as the agreed purchase price has been paid. These security interests include security interests in all accessions, parts and additions to these goods and all proceeds, including insurance proceeds. Applicant agrees to execute any document(s) necessary to perfect the security interests and consents to and authorizes Seller to file any financing statements or other instruments that Seller deems appropriate and reasonably necessary to perfect the security interests provided hereby.

III. NOTICE TO APPLICANT

A. Do not sign this contract before you read it or if any spaces intended for the agreed terms, except as to unavailable information, are blank.
B. You are entitled to a copy of this contract at the time you sign it.
C. You may at any time pay off the full unpaid balance due under this contract and in doing so you may receive partial rebate of the **FINANCE CHARGE** set forth herein.
D. The **FINANCE CHARGE** set forth herein does not exceed **18% PER ANNUM** computed daily.
E. You may cancel any purchases made under this Agreement if the Seller or his representative solicited in person such purchase, and you sign an agreement for such purchase, at a place other than the Seller's business address shown on the Agreement, by sending notice of such cancellation by certified mail return receipt requested to the Seller at his address shown on the Agreement, which notice shall be posted no later than midnight of the third day (excluding Sundays and holidays) following your signing of the purchase agreement. If you choose to cancel this purchase, you must return or make available to Seller any merchandise, in its original condition, received by you under this purchase agreement.

IV. EVERYTHING STATED IN THIS APPLICATION/AGREEMENT IS TRUE, CORRECT, AND COMPLETE. I HEREBY AUTHORIZE SELLER TO OBTAIN INFORMATION ABOUT ME FROM SELLER'S AFFILIATES, MEMBER DEALERS, CREDIT REPORTING COMPANIES OR OTHERS WHO HAVE PRIOR CREDIT EXPERIENCE OR INFORMATION ABOUT ME SUCH AS EMPLOYMENT VERIFICATION, PUBLIC RECORDS, INCLUDING BUT NOT LIMITED TO MOTOR VEHICLE RECORDS. I ACKNOWLEDGE I HAVE READ AND RECEIVED A COMPLETED TRUE COPY OF THIS AGREEMENT BEFORE SIGNING BELOW. I AGREE TO ALL TERMS AND CONDITIONS CONTAINED ON BOTH SIDES OF THIS APPLICATION/AGREEMENT.

V. I agree to pay Seller for all purchases made by me and by others I have allowed to make purchases under this Agreement. When I have a balance due Seller, Seller will bill me after the 25th of each month for all previous unpaid purchases. The monthly statement will set forth my total unpaid balance and my minimum monthly payment if applicable. Before the 10th day (20th day after statement closing in California) of each month following purchases, I agree to pay Seller either the total unpaid balance or the applicable specified minimum monthly payment as follows:

(A)

| If Ending Balance Is: | | | Minimum Monthly Payment Is: |
|---|---|---|---|
| | | | Balance |
| $ | 0.01 | – | 10.00 | $ 10.00 |
| $ | 10.01 | – | 50.00 | $ 15.00 |
| $ | 50.01 | – | 100.00 | $ 25.00 |
| $ | 100.01 | – | 250.00 | $ 50.00 |
| $ | 250.01 | – | 500.00 | $ 75.00 |
| $ | 500.01 | – | 1,500.00 | $ 150.00 |
| $ | 1,500.01 | – | 2,500.00 | 1/3 Balance |
| | OVER | | $2,500.00 | |

(B) **Minimum Monthly Payment Is:**

1/5 of the original purchase price or 1/5 the highest monthly statement balance, whichever is greater (or as otherwise agreed); plus monthly **FINANCE CHARGE** on the outstanding purchase price on a revolving basis.

(C) If I pay for purchases within 90 days of the purchase date, **FINANCE CHARGES** added to the unpaid balance will be reversed. If I do not pay for the purchases within 90 days of the date of purchase, Seller will add a **FINANCE CHARGE** to my account beginning as of the billing date shown on the monthly statement for the month in which Buyer made the oldest purchase and the account shall revert to Option V. (A) herein.

(D) If no box is checked, I will pay under the provision of Section V. Option (A) herein.

VI. Les Schwab Tire Centers/Affiliated Dealers is committed to protecting your financial privacy. For information regarding Les Schwab's Privacy Policy, please contact Les Schwab Tire Centers Credit Department at P.O. Box 667, Prineville, Oregon 97754, (541) 416-5140, or visit any Les Schwab Tire Center/Affiliated dealer.

VII. My payments will be applied as follows:
A. First, to unpaid late payment fees.
B. Then, to any applicable **FINANCE CHARGE.**
C. Then, to items first purchased.

VIII. If I buy more than one item at the same time, the lowest priced item will be paid first.

IX. I agree all items purchased under this Agreement are for personal, family, household use.
A. If I fail to perform as agreed, if Seller reasonably deems itself unsecure, or if I am otherwise in default, Seller may take any action allowed under applicable law.
B. I agree to immediately assemble and make available to Seller, and Seller may take back any goods under this Agreement. Seller may enter my driveway, garage or similar property without further permission from me.
C. I agree to pay all fees, costs, and expenses of collections, and/or fees, costs and expenses of restocking, special order, repossessing the goods, selling them, and all fees, costs and expenses of any other efforts to collect what I owe to the fullest extent allowed under applicable law.
D. I agree to pay Seller's attorney fees, costs and expenses, whether or not there is a lawsuit, and I agree to pay Seller's attorney fees, court costs and expenses, both at trial and on an appeal to the fullest extent allowed under applicable law.
E. I agree that my bank account may be debited electronically for the face amount of a returned check and for the returned check fee if any payment tendered by Buyer is returned to Seller unpaid. The return check fee will appear as a charge on the monthly statement in the month the check is returned to Seller.

X. If incurred, I agree to pay Seller's extraordinary administrative costs (postage and handling fees, telephone expense, correspondence fees, photocopy expense or other costs) associated with my account.

XI. All remedies shall be cumulative. Failure of Seller to exercise a remedy shall not waive that remedy.

XII. Seller may change the terms of this Agreement including, but not limited to, the **FINANCE CHARGE**, and the applicable **ANNUAL PERCENTAGE RATE** or **RATES**, the method of figuring the balance on which the **FINANCE CHARGE** is applied, the minimum monthly payment required, and/or the closing date and length of the monthly billing cycle, by mailing a notice of the change(s) to me as required by applicable law. I understand that: **All Unpaid Balances Are Due And Payable Upon Termination Of Employment.** I understand

XIII. If you are a Les Schwab employee purchasing under the Les Schwab Retail Credit Plan, the following applies: **All Unpaid Balances Are Due And Payable Upon Termination Of Employment.** I understand and agree that if my employment with Les Schwab terminates, for any reason, any unpaid balance on this Retail Credit Plan will become immediately due and payable, even if such a balance would not otherwise be due. I also agree that Les Schwab, as my employer, may deduct from my final paycheck or other compensation that is already due and owing at the time of the termination of my employment, the entire unpaid balance of my account.

XIV. EXCEPT AS EXPRESSLY SET FORTH IN WRITING AND SIGNED BY SELLER, SELLER PROVIDES NO WARRANTIES, EXPRESS OR IMPLIED, WHETHER OF FITNESS OR MERCHANTABILITY, FOR ANY GOODS OR SERVICES AND THE EXPRESS WARRANTIES PROVIDED SHALL BE IN LIEU OF ANY OTHER SUCH WARRANTIES. IN NO EVENT SHALL SELLER BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL OR OTHER DAMAGES OF ANY NATURE, EVEN IF SELLER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. IN THE EVENT OF DEFAULT, ALL PROVISIONS OF SELLER'S WARRANTIES BECOME NULL AND VOID. IF ANY PROVISION IS FOUND UNENFORCEABLE THE REMAINDER OF THE AGREEMENT SHALL REMAIN ENFORCEABLE.

**See customer copy attached hereto for important information regarding your right to dispute billing errors.**

**NOTICE:** Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof; recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.